## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE HARPER, | : | CIVIL ACTION NO. 3:CV-16-1640 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| B. TRITT, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

## I. Background

On August 9, 2016, Plaintiff, Maurice Harper, an inmate confined in the State Correctional Institution, Frackville, ("SCI-Frackville"), Pennsylvania, filed the above civil rights action pursuant to 42 U.S.C. § 1983. The named Defendants are the Dr. Haresh Pandya; Nelson ("Tony") Iannuzzi, CRNP; Superintendent Tritt; Deputy Superintendent Meintel; Stanishefski, CHCA; Food Service Manager Johnson; Karen Holly, CHCA; and Chad Yordy.

On August 23, 2016, Plaintiff filed a motion for leave to file an amended complaint. (Doc. 7). By Order dated September 22, 2016, Plaintiff's motion to amend was granted, and Plaintiff was directed to file an amended complaint, which

was to "be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." (See Doc. 8, Order).

On September 30, 2016, Plaintiff filed an amended complaint (Doc. 10), and an affidavit of fact in support of his complaint (Doc. 11) which were served on the Defendants by Order dated October 4, 2016. (Doc. 12).

Presently before the court and ripe for disposition are Defendants' motions to dismiss the Plaintiff's amended complaint. (Docs. 27, 30). The parties have fully briefed the issues and the motions are now ripe for disposition. For the reasons that follow, Defendants' motions to dismiss will be granted.

## II. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not

required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this

3

suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd,264 FedAppx. 183 (3d Cir.2008).

### III. Allegations in Complaint

Plaintiff states that he "used the prisoner procedure available at SCI-Frackville requesting pain relief medication for extreme back pains which hindered Plaintiff's ability to carry out normal activities." (Doc. 10, amended complaint).

On April 11, 2016, Plaintiff states that his "request for pain relief medication and back brace was denied." Id. Specifically, on April 11, 2016, Defendant, Karen Holly, CHCA, denied Plaintiff's Grievance No. 617928 as follows:

> Mr. Harper, I reviewed your grievance # 617928 and your medical record. You saw Dr. Pandya on 3-17-3016, not on 3-18-2016. In your grievance you state, "I have complained about chronic back pain for months to the Medical Department and every time was denied treatment until my condition worsened and I request help

4

again..." I researched back to your initial intake on 4/8/2016 and there is no documentation supporting any related complaints. The 3/17/2016 sick call visit is the first.

You complained of a painful lump located on your lower back. After an assessment/examination Dr. Pandya informed you of a subcutaneous fascia/fat herniation near the mid line of your back, or an abnormal protrusion of the connective tissue. Dr. Pandya provided you with verbal and paper education material of exercises that can help with the discomfort. There is no documentation supporting a discussion of a back brace or injections. There is no medical intervention required at this time.

You cannot compare your fatty hernia located on your back to other patients with hernias located in different areas of the body. Nor can you compare treatments.

This grievance is denied based on the above information above. You were provided medical care and there is no evidence of chronic back pain.

(Doc. 11 at 4, Initial Review Response). On April 17, 2016, Plaintiff filed an appeal

to the Facility Manager "requesting help with his pain and suffering and on May 1,

2016 Plaintiff's request for pain relief medication and back brace were denied."

(Doc. 10, amended complaint).

On May 18, 2016, Plaintiff "was transported to the medical department on a

wheelchair due to extreme back pains with muscle spasms that caused Plaintiff to be

paralyze on his cell floor suffering from extreme pain leaving him unable to move."

Id. Plaintiff states that he was "told by medical staff while he was paralyze on the floor that he would not receive treatment for his chronic back pains if he did not fill out a sick call request slip authorizing the medical department to charge him for treatment for his chronic back pains." Id. Plaintiff complains that "the Defendant unrelenting medical co-payments for Plaintiff sick call services for his chronic medical conditions and Plaintiff being fired from his prison job has resulted in a pay decrease and placed Plaintiff is financial destitute." Id.

On May 27, 2016, Plaintiff filed Grievance No. 622710, complaining about being removed from his job. (Doc. 36-1 at 37). By response dated June 21, 2016, Plaintiff's grievance was denied as follows:

> Inmate Harper you indicate in your grievance that FSS Pocono fired you due to the Medical Restrictions. You indicate that you have lost your pay grade and your light duty job assignment.
>
> Per DC-ADM 816: "Removal of an inmate from a work assignment for reasons other than misconduct or medical necessity must be handled by a Unit Management Team action."
>
> Inmate Harper you have not lost your pay rate. You have been temporarily placed on GLP. You are not authorized to work in the kitchen due to the nature of your current employment restrictions. If the employment restrictions are removed and you are placed back in your position you can be reinstated at the same pay rate due to your experience. If you are given a job elsewhere your experience and previous pay rate will be evaluated.

> Inmate Harper policy was followed, therefore inmate grievance
> #627710 is denied.

(Doc. 36-1 at 37, Initial Review Response).

Plaintiff alleges that the Defendants are punishing him for "filing complaints, under the disguise of medical co-payments". (Doc. 10, Amended Complaint). He claims that "Defendants' co-payments is to hinder Plaintiff attempts to gain access to the Courts by placing him in financial destitute." Id.

On August 12, 2016, Plaintiff filed Grievance No. 639588, challenging the removal from his job. (Doc. 36-1 at 26). In a response dated September 8, 2016, Defendant Karen Holly, CHCA, denied Plaintiff's grievance as follows:

> I reviewed your grievance #639588 and your medical record. You
> state you are being retaliated against because you filed a grievance
> against the medical department.
>
> You were not fired from your job, you were removed from your job
> due to medical restrictions (no walking on wet or uneven surfaces)
> that was applied on 8-5-2016. You requested sick call services and
> you were seen on 8-5-2016. You complained, "My low back pain
> reactivated." Low back pain is noted on 5-18-2016 and 5-25-2016.
> A lumbar-sacral x-ray of your spine was done on 5-27-2016. It
> showed scoliosis with convexity to the left with minor degenerative
> spurs. The medical restrictions are not punitive, but protective. In
> researching your restrictions, the "no walking on we or uneven
> surfaces" was removed. However, some restrictions still remain. It
> is the Corrections Vocational Employment Coordinator to seek out
> the proper employment based on your medical restrictions.

There is no record of you receiving a bland/vegetarian diet because you informed the Acting Director of Bureau of Health Care, Andrea Norris, that you are not prescribed a high fiber diet. Ms. Norris is not the acting Director and you are prescribed a non-standard diet for Gastroesophageal Reflux Disease (GERD). The dietary department is to follow a no tomato, onion, etc, diet for the Barretts Disease you were diagnosed with in 2014.

This grievance is denied based on the documentation supported throughout your medical record and noted above. This shows no evidence of retaliation and/or discrimination. Currently, Ms. Norris is not and was not the Acting Director of Bureau of Health Care on 8-12-2016 when you wrote this grievance. I'm not understanding how a high fiber diet can assist you with your GERD. A GERD diet is a diet with no alcohol, no caffeine, no citrus, no acidity, no dairy and no fried food. A bland diet is a diet that is soft on the digestive system. The food is cooked rather than raw, low fiber, no fat or fried foods, no dairy or no spicy food. In 2015, you were prescribed a bland diet for your GERD before it became known as the GERD diet. A bland diet is interchangeable with a GERD diet. A high fiber is contraindicated for someone with GERD because it would be hard on the digestive system. A high fiber diet was never prescribed and I'm not understanding why you think it would.

(Doc. 36-1 at 26, Initial Review Response). Harper filed an appeal of the denial of

Grievance No. 639588 to the Facility Manager, who, by Response dated October 3,

2016, upheld the initial grievance response. (Doc. 36-1 at 29, Facility Manager's

Appeal Response).

Plaintiff filed the instant action in which he seeks, "adequate medical

treatment, and a MRI to determine how serious this hernia and or how damaged the

8

fascia tissue is that covers, supports, and separates muscles and to make sure that [he] is not suffering from a form of cancer and or a herniated disk", since "the pain is mostly in the center of [his] lower back with a lump that is getting bigger." (Doc. 11). He also requests "painkilling drugs and a back brace." Id.

## IV. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient

to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical

11

judgment of the attending physician. <u>Little v. Lycoming County</u>, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. <u>Farmer v. Carlson</u>, 685 F. Supp. at 1339.

The allegations in Plaintiff's amended complaint, and his supporting exhibits, clearly demonstrate that Plaintiff has received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff's own allegations and supporting exhibits reveal that Plaintiff was examined and found to have an acute fascial/fat hernia, and not "chronic back pain" as he now describes. Although he was provided with stretching exercises to relieve his discomfort and was encouraged to purchase medication from commissary, Plaintiff now suggests that other interventions should have been considered to relieve his pain, including injections, prescription pain medications, and a back brace. However, Plaintiff's exhibits demonstrate that Dr. Pandya did not believe these interventions were warranted and, therefore, he did not prescribe the same.

At best, Plaintiff's complaint demonstrates his disagreement with medical personnel's decisions in treatment. Plaintiff's disagreement with the medical

Defendants course of treatment, however, does not serve as a predicate to liability under § 1983. See, White v. Napoleon, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under § 1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

**B.**     **Medical Co-Pay Claims**

In his Amended Complaint, Plaintiff appears to allege that the medical co-pays violate the United States Constitution inasmuch as "they hinder plaintiff['s] attempts to gain access to the Courts by placing him in financial destitute." (Doc. 10, Amended Complaint). To the extent that Plaintiff asserts a claim under either the Eighth or Fourteenth Amendment, his claims fail as a matter of law.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that state and its officials to provide medical care to sentenced prisoners. Reynolds v. Wagner, 936 F. Supp. 1216 (E.D.Pa. Aug. 14, 1996) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976). However, the Supreme Court has never held that the government must pay for it. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245, n.7 (1983) ("Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medial services provided to him.").

In Reynold v. Wagner, the United States District Court for the Eastern District of Pennsylvania found that

> fee for medical services programs . . . do not necessarily involve
> 'arbitrary and burdensome procedures.' Nor do they necessarily
> result in 'interminable delays and outright denials of medical care.'
> Rather, these programs require that inmates with adequate resources
> pay for a small portion of their medical care, usually with the goal

14

of instilling inmate responsibility. Accordingly, we reject
Plaintiffs' contention that any fee for medical services program is
per se unconstitutional.

. . . [E]ven if [the co-pays] were to lead inmates to forgo medical
treatment, we still find no constitutional violation. Inmates know or
should know they will never be denied medical care because of
inability to pay. This leaves only inmates who forgo medical care
for pecuniary reasons. We will not impute deliberate indifference
to a prison stemming from an inmate's choice as to personal
resource allocation. Inmates are not being forced to bear
unconstitutional conditions, but are rather being forced to make
responsible resource allocation decisions.

Reynolds, 936 F. Supp. 1216 (citations omitted).

Plaintiff's amended complaint is devoid of any allegations that he was ever

denied medical care due to an inability to pay for these services. Rather, he suggests

that the co-pays limit his ability to pay fees for "filing complaints." (Doc. 10,

Amended Complaint). Therefore, contrary to Plaintiff's allegations, he is not being

subjected to unconstitutional conditions, but is rather being forced to make

responsible resource allocation decisions. Pursuant to Reynolds, however, this is not

unconstitutional. Martin v. DeBruyn, 880 F. Supp. 610, 615 (N.D. Ind. 1995) ("If the

inmate can afford the medicine but chooses to apply his resources elsewhere, it is the

inmate, and not the prison official, who is indifferent to serious medical needs.").

15

Plaintiff also alleges that he was unfairly charged a co-pay for a condition which he believes should be classified as "chronic" under the Department of Corrections' policy. The Court takes judicial Department of Corrections Policy Statement, DC-ADM 820, which states that if a medical condition falls under one of the very limited categories defined as "chronic" by the DOC, which includes HIV/AIDS, hepatitis, asthma/COPD, hypertension, Dislipidemia, seizures, cardiac disease, thyroid disorder, and diabetes, an inmate is not required to pay a co-pay for sick call visits and medications related to this chronic condition. See http://www.cor.pa.gov/. Neither hernias nor back pain is a "chronic condition" pursuant to the Department of Corrections policy and, therefore, even if Plaintiff's condition is recurrent and ongoing, a co-pay is required for treatment of the same. See McCabe v. Pa. Dep't of Corr., 2012 WL 6055024 (M.D. Pa. Dec. 5, 2012) (which delineates "chronic" conditions under the Pennsylvania Department of Corrections' policy, and finding that hernias are not deemed "chronic").

Plaintiff alleges that the Defendants "documented plaintiff's chronic medical conditions as not being chronic medical conditions." (Doc. 10, Amended Complaint). As it pertains to co-pays, Plaintiff is correct; however, this was not done for any nefarious reason. Rather, Mr. Iannuzzi and Dr. Pandya were following the

Department of Corrections' co-pay policy, and charged Plaintiff for all medical care that was not deemed "chronic" under the policy.

To the extent Plaintiff claims that Defendant's make "false entries in plaintiff['s] medical records, this does not support a finding of deliberate indifference as Plaintiff fails to state how this impacted his medical care. Rivera v. Tennis, 2010 WL 2838603 (M.D. Pa. May 20, 2010), see also Moore v. Casselberry, 584 F. Supp. 2d 580, 582 (S.D. N.Y. 2008) (the conclusory statement that the defendant nurse filed an incomplete or false medical report does not state a federal constitutional violation).

Moreover, Plaintiff's challenge to the medical co-pays does not establish a Fourteenth Amendment violation. To establish a due process violation under the Fourteenth Amendment, a plaintiff must demonstrate that the defendants deprived him of either a property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). Property rights are basic civil rights and a deprivation of property without due process gives rise to a claim under section 1983. Lynch v. Household Fin. Corp., 405 U.S. 538, 553(1972). Inmates have a protected property interest in the funds in their prison accounts. Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997). Accordingly, "inmates are entitled to due process with respect to any deprivation of

money [from their accounts]." Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002) (citations omitted).

In Reynolds, the Third Circuit Court of Appeals held that charging prisoners in a county prison with small co-payments for medical treatment is not prohibited by the Constitution, so long as they are provided with care even when they could not afford to pay the fees. Reynolds, 128 F.3d at 174. In finding no violation of the Due Process Clause, the Reynolds Court noted: "[T]his is not a situation in which the inmates are deprived of the benefits of their property and receive nothing in return; rather in exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed." Id. at 180. Thus, the court concluded that a policy requiring pre-treatment co-payments from an inmate's prison account for medical treatment of non-chronic, non-emergency ailments does not violate an inmate's due process rights.

The Pennsylvania Department of Corrections co-pay policy, which is applicable to the instant matter, has similarly been found to be constitutional. In McCabe v. Pa. Dep't of Corr., 2012 WL 6055024 (M.D. Pa. Dec. 5, 2012), this Court stated:

18

[Plaintiff] was also aware that the medical department did not classify his reducible hernia as chronic or life-threatening. Although he adamantly contends that his reducible hernia should have been considered a chronic condition and thus exempt from a co-payment, a mere disagreement in judgment between Plaintiff and professional health care providers does not, without more, establish a fourteenth amendment due process rights violation. Unfortunately for Plaintiff, regardless of how strongly he argues that his reducible hernia is a chronic condition, not only is his argument subjective and conclusory (and thus not entitled to the assumption of truth for purposes of a motion to dismiss), but a reducible hernia is not a condition that appears in any way equal to those conditions defined as chronic for purposes of the DC-ADM 820. Thus, Plaintiff's argument, that the DOC policy requiring him to provide a co-payment from his inmate account for treatment of his medical condition is an unconstitutional imposition upon his due process rights, is without merit.

Plaintiff has failed to articulate any facts that would suggest that the Department of Corrections' co-pay policy is unconstitutional under either the Eighth or Fourteenth Amendment. Similar to the Plaintiff in McCabe, Plaintiff's condition is not "chronic" for purposes of the Department of Corrections policy and, thus, he is obligated to pay a co-pay for medical services. Accordingly, Plaintiff's arguments regarding his medical co-pays will be dismissed.

## C. Retaliation

Plaintiff alleges that the Defendants "documented plaintiff's chronic medical conditions as not being chronic medical conditions in order to punish plaintiff and

hinder his attempts to gain access to the courts by placing him in financial destitute so that he would be unable to fund his complaints." (Doc. 10, Amended Complaint).

A prisoner claiming that prison officials have retaliated against him for exercising his rights under the First Amendment must prove that: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendant's conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)). An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); see also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Once a plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to

penological interest." Carter, 292 F.3d at 158. When analyzing a retaliation claim, courts are to bear in mind that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

Plaintiff has alleged no facts that would support a finding that any of the actions that the Defendants took were motivated by an attempt to punish Plaintiff for exercising his First Amendment. To the contrary, as indicated above, the Defendants charged Plaintiff a co-pay for one simple reason: Plaintiff's back pain is not considered a chronic condition under the Department of Corrections' co-pay policy and, therefore, he is obligated to pay a co-pay for any medical care and/or medication related to this condition. As such, there is no evidence that would support a finding that Defendants' actions were retaliatory, and Plaintiff has not offered a plausible argument to explain how this assessment could be considered retaliatory. Plaintiff was appropriately assessed co-pays under the Department of Corrections' policy. Such assessment is lawfully and reasonably related to an adequate penological interest, which by law defeats a retaliation claim. See Rauser, 241 F.3d at 334 ("the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate

21

penological interest."). Consequently, Plaintiff's retaliation claim will be dismissed.

## D. Personal Involvement

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir.1993); Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 (M.D.Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir.1976); Parratt, supra. The doctrine of respondeat superior does not apply to constitutional claims. See Ashcroft v. Iqbal, 556 U.S. 662, (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior." ); see also Evancho v.

22

<u>Fisher</u>, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior ) (citing <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim.  <u>Iqbal</u>, 556 U.S. at 675 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As the Court stated in <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs.... [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge
> and acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

<u>See also</u> <u>Beattie v. Dept. of Corrections SCI–Mahanoy</u>, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing <u>Rode</u>, <u>supra</u>.

Finally, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil

rights action. <u>Glenn v. Delbalso</u>, 599 Fed.Appx. 457 (3d Cir. 2015)(access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983); <u>Mincy v. Chmielsewski</u>, 506 Fed. App'x. 99 (3d Cir. 2013)(an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement); <u>Brooks v. Beard</u>, 167 Fed. App'x. 923 (3d Cir. 2006)(holding that although the complaint alleges that Appellees responded inappropriately to Brook's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself).

Plaintiff's only allegation with respect to Defendant Yordy is that he "was the person responsible and obligated to insure that a complete copy of plaintiff's medical records was transferred with him, so that Plaintiff's chronic illness can be logged" so that "the Corrections Vocational Employment Coordinator can seek out the proper employment based on the information in a 'complete copy of medical records' upon his arrival at SCI-Frackville." (Doc. 10, Amended Complaint). Plaintiff makes no mention or connection between such responsibilities and the actions taken or not taken by Defendant Yordy amounting to a constitutional violation. Plaintiff makes no connection between Yordy and medical co-payments,

access to courts, or false entries in his medical records—the three "claims" he attempts to assert in his amended complaint. As such, this Defendants should be dismissed for Plaintiff's failure to allege the personal involvement of this Defendant in any constitutional violation.

Moreover, aside from naming Defendants Superintendent Tritt, Deputy Superintendent Meintel; Stanishefski, CHCA; Food Service Manager Johnson; and Karen Holly, CHCA in the caption of the complaint, Plaintiff's amended complaint is devoid of any allegations regarding these Defendants. It is apparent from Plaintiff's exhibits that the only roles of Defendants Superintendent Tritt, Deputy Superintendent Meintel; Stanishefski, CHCA; and Karen Holly, CHCA were all connected to the filing of Plaintiff's grievance and subsequent appeals. However, such claims that these Defendants violated his constitutional rights regarding their handling of his grievance, fails as a matter of law, and these Defendants are entitled to dismissal.

## V.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile . See Grayson v. Mayview State

Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Based on the foregoing and the fact that Plaintiff has already been provided an opportunity to file an amended complaint, we find futility in allowing Plaintiff to file a second amended complaint with respect to the allegations raised in the instant action.

## VI.    **Conclusion**

Defendants' motions to dismiss Plaintiff's amended complaint for failure to allege either a First, Eighth or Fourteenth Amendment claim, and for failure to allege personal involvement will be granted.   An appropriate order will follow.

Dated: October 19, 2017                     /s/ William J. Nealon
                                            **United States District Judge**